LEONARD D. FISK ET AL. *vs.* THE CITY OF HARTFORD.

First Judicial District, Hartford, May Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A riparian mill owner has no usufructuary right in the sewage of a city which is discharged into the stream above his mill.

Nor does the fact that this sewage consists largely of water which in its pure state was taken by the city from the head waters and tributaries of the stream upon which the mill is located, give the mill owner any greater right in this respect. If the city has by its use wrongfully

diminished the flow of the stream to his injury, he has a remedy
therefor; but he cannot, upon that ground, enjoin the city from remov-
ing its sewage from the stream, nor recover damages for such removal.
In the present case the plaintiffs' complaint detailed at length the steps
which the city had taken in regard to building a trunk sewer and re-
moving its sewage from the stream. *Held*, on demurrer; that it suffi-
ciently appeared that the action taken by the city was by virtue of the
general provisions of its charter, and not by authority of a compara-
tively recent Special Act of the legislature.

[Argued May 13th—decided July 13th, 1897.]

SUIT to restrain the defendant from diverting the water
of Park river into an intercepting sewer, until compensa-
tion therefor should be made to the plaintiffs as riparian and
mill proprietors; brought to the Superior Court in Hartford
County and reserved by that court, *Elmer, J.*, upon demurrer
of the defendant, for the consideration and advice of this
court. *Judgment sustaining demurrer advised.*

The case is sufficiently stated in opinion.

*Lewis E. Stanton* and *William J. McConville*, for the de-
fendant.

The intercepting sewer is not built nor authorized under the
Act of 1882. That Act has no application to its construction.
This is entirely plain from the complaint itself. See also
Special Acts of 1886, p. 211; City Charter, pp. 950, 97, 271–
281. Even if the Act of 1882 be regarded as an amendment
to the charter, yet the sewers of the city are not to be built
under it. They are to be built under those regulations which
are provided by the charter and ordinances of the city, as the
Act of 1886 has declared. The city is acting under its police
powers; the court will not, by injunction, arrest the city when
proceeding under health laws and exercising police powers.
*Slaughter-House Cases*, 16 Wall. 36; *Mugler* v. *Kansas*, 123
U. S. 623, 658; *Munn* v. *Illinois*, 94 id. 124; *Taunton* v. *Tay-
lor*, 116 Mass. 254; *Watertown* v. *Mayo*, 109 id. 315; *Com-
monwealth* v. *Alger*, 7 Cush. 52, 85, 86. It makes no difference
how the nuisance originated. The city must abate it, and it
ought not to be arrested by a court of equity in its attempt
to do so. *Matter of Cheesebrough*, 78 N. Y. 232; *Russell* v.
*Mayor*, 2 Denio, 461–474; *Bertholf* v. *O'Reilly*, 74 N. Y.

509. A public municipal corporation may be compelled to abate a nuisance. *Morgan* v. *Danbury*, 67 Conn. 484. If the city is a violator of the rights of others, it renders itself liable to an action by discharging its sewage into Park river. It cannot also be liable for ceasing to violate said rights. Wood on Nuisances, §§ 743–745. It cannot be a violator of the law at the same time it is acting under the law in order to promote the health of the people. *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Baker* v. *Boston*, 12 Pick. 184. The plaintiffs can have no ownership in the city's sewage. *Morgan* v. *Binghamton*, 102 N. Y. 500, 504. Municipal corporations are not liable for consequential damages where private property is not directly encroached upon, unless by misconduct, negligence, or want of skill. *Atwater* v. *Canandaigua*, 124 N. Y. 602. Mere consequential injuries do not amount to a taking of property for public use. See cases cited in Cooley's Const. Lim. 542–544. Even if the plaintiffs are entitled to compensation they have not sought the proper remedy. *Fellowes* v. *New Haven*, 44 Conn. 240; *Woodruff* v. *Catlin*, 54 id. 297; *Hovey* v. *Mayo*, 43 Me. 322; *Benjamin* v. *Wheeler*, 8 Gray, 409; *Diamond Match Co.* v. *New Haven*, 55 Conn. 510.

*Henry C. Robinson* and *William F. Henney*, with whom was *John T. Robinson*, for the plaintiffs.

Unless the city proceeds under the Act of 1882, it has no right to proceed at all. Special Acts of 1867, p. 315; id., 1859, p. 359, § 24. The Act of 1882 was passed by the legislature because the city had no authority to control this stream, or to divert it. It had in view precisely the position which the city finds itself in, the importance of purifying Park river. That this should be done in some proper method is admitted by everybody. Whether or not the intercepting sewer is such proper method, is a matter of grave doubt. That general powers to protect public health and build sewers, do not confer upon municipalities the right to take innocent lands, water rights, etc., is very clear. The power calls for a special grant, and provision must be made in the

grant for compensation. *Cavanaugh* v. *Boston*, 139 Mass. 426. The demurrer argues that the intercepting sewer is built under the police powers of the State. So are all sewers. If a city can take any property it chooses to in building a sewer, because making a sewer is a governmental act in the interest of health, the expense to municipalities of constructing sewers would be materially reduced. *In re Cheesebrough*, 78 N. Y. 232. The claim that there is a nuisance apparent on the face of this complaint as a matter of law, is indefensible. We may go farther and say that it is well settled that municipal authorities themselves cannot arbitrarily declare a thing to be a nuisance until such fact has been lawfully ascertained, and that by a judicial adjudication. *Yates* v. *Milwaukee*, 10 Wall. 497 : *Salem* v. *East River Co.*, 98 Mass. 431; *State* v. *Jersey City*, 29 N. J. L. 170 ; *Clark* v. *Mayor*, 13 Barb. 32 ; *People* v. *Albany*, 11 Wend. 539. Can the defendant, by its reasons of demurrer, after admission of the facts pleaded in the complaint, and without judicial investigation be heard to assert that the river is a nuisance? A city cannot take water from a running stream for purposes of health, or any other public purpose, without compensating the millers on the stream who are entitled to the usufruct of the water. *Harding* v. *Stamford Water Co.*, 41 Conn. 87 ; *Kellogg* v. *New Britain*, 62 id. 233 ; Tied. on Mun. Corp. § 354, *n.* 4. But if the stream is in any sense a nuisance, it is so simply because of the city's own use of it. The plaintiffs have not polluted it ; they are owners below the assumed pollution. When the city took the water from us it was clear and pure. This principle that the city cannot assert this nuisance, if nuisance it really is, when they themselves made it, is clearly declared in the case of *Hannibal* v. *Richards*, 82 Mo. 330. See also *Weeks* v. *Milwaukee*, 10 Wis. 269; *Finley* v. *Hirschey*, 41 Iowa, 394. Injunction is the proper remedy. 6 Amer. & Eng. Ency. of Law, 502 ; Tied. on Mun. Corp. 787 ; *Hollingsworth* v. *Water Supply District*, 165 Mass. 188; *Proprietors* v. *Water Supply Co.*, 149 id. 478, 484 ; *Hart* v. *Aqueduct*, 133 id. 488 ; *Cowdry* v. *Woburn*, 136 id. 400, 411 ; *Lyon* v. *McLaughlin*, 32 Vt. 423 ;

*Woodruff* v. *Catlin*, 54 Conn. 277, 297 ; *Morgan* v. *Danbury*, 67 id. 496.

TORRANCE, J. To the original complaint in this case—which sought to enjoin the defendant from diverting, in the manner therein alleged, the flow of water into Park river—a demurrer was filed and sustained, with leave to amend. The complaint was then amended, a demurrer thereto was filed, and thereupon the questions arising upon both demurrers were reserved for the advice of this court. As the determination of the questions arising upon the demurrer to the amended complaint disposes of the case reserved, it will be unnecessary to consider those arising upon the demurrer to the original complaint.

The amended complaint consists of two counts. The substance of the material parts of the first count, by paragraphs, may be stated as follows :—

1. The plaintiffs are the owners of a valuable mill property on Park river in the city of Hartford, with mills upon both sides of the river, one upon Elm street, and the other immediately opposite upon Wells street. They are the owners, at that point and for a considerable space upon each side of it, of the banks of the river, and of its bed, and the exclusive owners of the water privileges at that point. 2. The water power available at this point to the plaintiffs, by means of their dam, is equivalent to about two hundred horse power upon the average. 3. The water privilege is an ancient one, having been established, used and occupied as such for more than two hundred and fifty years. 4. The value of the mill property in connection with the water privilege is $250,000, and the plaintiffs have established a large and profitable business thereon as millers, and the water power is sufficient, without the assistance of steam, to carry on the entire business of the plaintiffs as such millers. 5. The defendant is the owner of a large and important system of reservoirs, for the use of the citizens of Hartford for domestic and other purposes. The water of all these reservoirs is communicated to a certain distributing reservoir, whence by leading pipes it

is carried to the streets, houses, stores, and lands in the city, and is thence nearly in whole returned to Park river above the plaintiffs' dam, by the present drains, pipes, and sewers of the city, and is thereby made available to the plaintiffs in the use of their said water privilege. 6. All the water collected and carried by the city in all of said reservoirs is from brooks, streams and springs which are tributary to Park river, to the entire current and flow of which river the plaintiffs are entitled by their mill and riparian ownership aforesaid. 7. Since the introduction of the system of water supply by said city, referred to in paragraph fifth, down to the present time, the water collected in such reservoirs, as they were severally completed and put in operation, has been largely if not entirely returned to said river, and made available for the uses of plaintiffs in the enjoyment of the said mill privilege, as set forth in paragraph fifth. "8. The said city has recently, to wit, within about a year from the date of this complaint, built and completed a reservoir in the town of Bloomfield, known as the Tumbledown Brook reservoir, of very extensive area, in which the said city has accumulated, and still continues to accumulate and hold, vast quantities of water from the watershed, streams, brooks, and springs tributary to said Park river, and to whose usufruct the plaintiffs are entitled as aforesaid, and has connected the same by canals with said distributing reservoir, whence the said water is returned to said river, and made available for the uses of the plaintiffs in their mill work, as set out in paragraph fifth. 9. The surface water flowing from all points this side of the distributing reservoir now finds its way either by direct surface flowage, or by the existing drains, pipes, and sewers of the city, into Park river; some small portion of said surface water, however, and also a small portion of the water brought from the reservoirs, is carried into Park river below the complainants' mill dam and into the Connecticut." 10. The city is now constructing an immense intercepting sewer designed to divert, and which will divert, all the water now conveyed by pipes, drains, and sewers, and by surface flow into Park river above plaintiffs' dam, away from Park river

into the Connecticut river, and it intends to and will wholly divert said water as aforesaid unless restrained by injunction. 11. " The proposed intercepting sewer is particularly described in an exhibit which, by reference, is made part of this complaint, and will be filed in court as 'Exhibit B.'" 12. This diversion will deprive the plaintiffs of the use of from one third to one half the volume of water whose usufruct belongs to them, and will be a great and irreparable injury and damage to them. 13. By an Act of the General Assembly passed at its session in 1882, authority was given to the city to take, occupy, and appropriate any stream or part of a stream running in or through said city, and to remove dams, walls and other obstructions to the free and healthful flow of such stream or part of a stream, and to raise said dams and build other dams where the public health or convenience may require, and to cause it to flow through a sewer or other aqueduct built in or upon the bed of said stream or laid in the earth in or near the bank thereof; and by said Act it was required that the city should agree if possible with parties interested, upon the damage on account of such improvement; and if unable to so agree, that the city should have the damages appraised and paid in the manner prescribed in said Act. 14. In March, 1894, the plaintiffs presented their claim for damages, in the manner prescribed by said Act, to the proper authority; but neither the city, nor any one in its behalf, has " ever made any offer to compensate to any extent the plaintiffs for the damages which will arise from said so-called improvement, nor have they agreed or attempted to agree with the plaintiffs upon such damages, although frequently requested by the plaintiffs." 15. Neither the city nor any one in its behalf has taken any of the steps in said Act prescribed, or otherwise, to have the plaintiffs' damages aforesaid ascertained or appraised, but it " threatens to continue the building and completion of said intercepting sewer, and to divert from said stream of water and from plaintiffs' use nearly one half of its flow and current, without any compensation whatsoever to the plaintiffs for their damages resulting from said so-called improvement."

16. Such diversion will injure the plaintiffs to the amount of at least $100,000. 17. If the city does what it threatens to do, without agreeing with the plaintiffs as to their damages, or having the damages appraised and paid, the injuries inflicted upon the plaintiffs will be irreparable and incapable of estimate, and plaintiffs will be without adequate remedy. 18. On the 24th day of July, 1893, the common council of the city were of opinion, and expressed that opinion by action at the time, "that the proper sewage of the city required the diversion of the water from Park river," and then passed certain votes "whose effect will be to cause a large part of such stream, which now flows into the natural channel of said river, to flow through a sewer to be built in part in and upon the bed of said such stream, and in part on either bank thereof." 19. On the same day the court of common council "passed a vote proposing said so-called improvement, and referred the same to the board of street commissioners, and the said court of common council and the said board of street commissioners prepared a descriptive survey of the improvement proposed, with a careful estimate of the cost of completing the same." 20. In February, 1894, the board of street commissioners gave proper notice of a time and place for hearing all parties interested in said improvement, and the plaintiffs appeared at the proper time and place and made their claims to said board for the damages which would be caused to them by said improvement and the consequent diversion of water as aforesaid. 21. At said meeting no agreement was made with the plaintiffs with reference to said damages.

The relief prayed for was as follows: "The plaintiffs claim an injunction restraining the defendant city from diverting into said intercepting sewer, or any part of the same, or elsewhere, the present current and flow of water into said Park river, at and above the said dam of plaintiffs, whether such present current and flow be through drains, pipes, sewers, surface flowage, or otherwise, until an assessment of the damages resulting to plaintiffs from such diversion shall have been assessed or agreed upon, and the payment thereof made

or secured in accordance with the provisions of an Act of the General Assembly, entitled 'An Act granting control of Park River to the City of Hartford,' approved March 22d, 1882."

The first sixteen paragraphs of the first count were made part of the second count, and the remainder of the second count, with the relief prayed for, was as follows : " 2. The defendant threatens to divert from said stream of water, and from the plaintiffs' use thereof, nearly one half .of its flow and current, without any compensation whatsoever to the plaintiffs for their damages directly resulting from said so-called improvement.   3. The diversion of said water as aforesaid by the defendant will cause an irreparable damage to the plaintiffs, and damages incapable of estimate.   4. The defendant has never compensated nor paid in any way the plaintiffs for the accumulation of the water of Tumbledown Brook reservoir, as described in the 8th paragraph of the first count, nor has it attempted to agree with the plaintiffs as to the amount of said damages.   5. Until the plaintiffs are deprived of the use of said water, which is now returned to them as hereinbefore set out, they suffer no substantial damage ; but when said water is carried past the plaintiffs' dam, as proposed by the construction and use of said intercepting sewer as aforesaid, the same will be of great and irreparable damage to them.   6. For the accumulation of the waters of the stream and its tributary springs and brooks, described in paragraphs 6 and 7 of the first count, no compensation has ever been made to the plaintiffs or their predecessors in the ownership of the mill privilege aforesaid. 7. The storage capacity of said reservoirs is as follows : No. 1. 146,000,000 gallons, No. 2. 284,000,000 gallons, No. 3. 146,000,000 gallons, No. 4. 601,000,000 gallons, No. 5. 94,000,000 gallons, No. 6. 800,000,000 gallons.   No. 6 is Tumbledown Brook reservoir.   The average daily consumption of said water by the defendant's water department is about 7,000,000 gallons.

" The plaintiffs amend the prayer for relief, by making the same as it now stands paragraph 1 of plaintiffs' claims, and

adding thereafter the following: 2. An injunction restraining the defendant city from diverting into said intercepting sewer, or any part of the same, or elsewhere, the present current and flow of water of the said Park river at and above said dam of the plaintiffs, whether such present current and flow be through drains, pipes, sewers, surface flowage, or otherwise, until the injury aforesaid done and to be done to the plaintiffs is compensated and paid for. 3. Such other and further relief as may to equity pertain."

After the complaint as thus amended was filed, it was further amended by way of more specific statement as follows: " The plaintiffs herewith amend the complaint by making more specific statement as follows: (1) At the end of paragraph 19 add the following: The action and opinion of said court of common council referred to in paragraphs 18 and 19, were expressed by certain votes, copies of which, with the subject-matter and the correct dates thereof, appear in the annexed journals of the board of common council and the board of aldermen of said court of common council, which are marked Exhibits ' C ' and 'D' respectively, at pages 185–217 inclusive, and 251 of Exhibit ' C,' and pages 222, 336, 337, 446, and 461 of Exhibit ' D.' The plans, maps, and surveys referred to at page 217 of Exhibit ' C,' are made a part hereof by reference, the same being in the possession of the defendant, and of such a character that the plaintiffs are unable to file the same. The report of the committee, with the resolution therein submitted, a copy of which appears at pages 336 and 337 in said Exhibit ' D,' is still pending in said court of common council. (2) At the end of paragraph 20 add the following: The action of said street board referred to in this paragraph, was pursuant to a vote of said court of common council, a copy of which, with the subject-matter and the correct date thereof, appears in said Exhibit ' C,' at pages 479–481 inclusive. A copy of the publication of the resolution therein mentioned, so far as there was any publication thereof, is the plaintiffs' Exhibit ' B.' A copy of the publication of the notice given by said street board and referred

to in this paragraph, with the correct date of such publication, is hereto annexed and marked Exhibit ‘E.’ ”

Exhibit “ C ” shows, in substance, that the city, in July, 1893, resolved to construct the intercepting sewer complained of, in order to remove, what is called in said Exhibit “ C,” “ the Park river sewage nuisance,” and also as “ an improvement to the city’s sewerage system in general.”

Exhibit “ D ” shows, in substance, that in July, 1893, the common council appointed a committee to ascertain and report the probable cost of extinguishing the flowage rights of the plaintiffs, and of acquiring their entire mill property ; that in November of that year said committee made a report and asked for further power in the premises. This report was eventually tabled by the board of aldermen, in March, 1894, and so remains.

Exhibit “ E ” is as follows : “ Board of Street Commissioners, Hartford, Conn., March 19th, 1896. This Board will meet Monday evening, March 19th, 1896, at 7 :30 o’clock, to hear all parties interested in the matter of damages for the right of way for the proposed system of intercepting sewers and branches thereof. ᐧ Parties interested are invited to be present. *Charles H. Northam*, President.”

So far as it is deemed necessary to set out the demurrers, they are as follows. To the first count: “ The defendants demur to the first count of the plaintiffs’ complaint, for the following reasons: None of the votes or resolutions passed by the court of common council of the city of Hartford, referred to in paragraphs 18 and 19, or any paragraph of the first count, as amended or in plaintiffs’ specific statement, have the effect, or as matter of law contain any vote or determination of the common council, to divert any part of the Park river, or to take the waters of said river out from its stream, or any part thereof, or cause it to flow through a sewer, or other aqueduct built in or upon the bed of such stream, or laid in the earth in or near the banks thereof. It does not appear from the first count nor any amendments thereof, that by virtue of any of said votes or resolutions, the city of Hartford took any action under the act of March

VOL. LXIX—25

22d, 1882, referred to in said count. Because it appears from the first count as amended, that the notice or notices referred to in paragraphs 19 and 20 of the same, as amended by specific statement, or in any paragraph of said count, and the action of any of the board of street commissioners and of the common council of the city of Hartford, were each and all of them notices or action in relation to the construction of sewers under the ordinary regulations prescribed by law relating to the construction of sewers in accordance with the charter of the city, and were not either notices or action for any proceeding under the Act of March 22d, 1882, and were not part of any proceedings to divert the waters of Park river from the stream, or to carry said waters in any sewer laid in its bed near either of its banks. Because it does not appear from any averments in the first count contained, that the Special Act of March 22d, 1882, has any application to the building of the intercepting sewer described in the first count.

" The defendant also demurs to the second count of the amended complaint, for the following reasons: It appears from the second count, and from various paragraphs thereof, and especially from paragraph 10, that the defendant is not proposing to divert Park river, nor any streams of water which flow into the same, but is proposing merely to keep sewage out of Park river, to turn sewage or sewage water from certain sewers into an intercepting sewer and take said sewage into the Connecticut river. It appears from the second count, and especially from paragraph 10 of the original complaint, now made part of the second count, that the acts of the defendant complained of are done in the course of the construction of a certain intercepting sewer by the city of Hartford, and the proposed use of the same in order to turn sewage into the Connecticut river. And there are no averments in the second count which tend to show that such construction of a sewer or diversion of sewage on the part of the defendant is unlawful. The defendant demurs to the relief demanded in the second count of the complaint, because upon the allegations of the second count the plaintiffs are not entitled to the relief by way of injunction as therein sought.

" The defendant demurs to the entire complaint as amended, for the following reasons: Because the Special Act of March 22d, 1882, found in the Special Acts of 1882, page 419, is merely a permissive Act authorizing the city of Hartford to do certain things named therein, but not imposing upon the city of Hartford any obligation to take action under the same, and because said Act has no application to the building of said intercepting sewer, or to any damages arising therefrom. Because the city of Hartford has full right, under the laws of the State, to abandon all action under the Act of March 22d, 1882, and also to resort to another method of drainage, and an injunction ought not to issue in order to restrain it from performing its duty in the premises. Because under the charter of the city, its court of common council is vested with full powers to pass ordinances for laying out and constructing and altering public sewers, through the highways, streets, including turnpike roads, alleys, and public grounds within the city, and also through the private inclosures within the same. And, further, by said charter it is made the duty of the board of street commissioners of the city of Hartford to cause the prompt completion of all necessary repairs of streets, highways, sewers, and public works, within the limits of the streets, highways, and thoroughfares of the city, other than public buildings. Because it appears from the complaint that the defendant city is constructing said intercepting sewer under its police powers in the discharge of a governmental duty, in order to promote and preserve the public health. Because it appears from the complaint that the object of the same is to compel the defendant city to take action under the Act of March 22d, 1882, when no obligation rests upon the city to take such action, and if an injunction should issue, the city would be restrained from making use of a sewer which is constructed in order to promote and preserve the public health. Because the construction and use of said intercepting sewer is a public work of great importance, and of great necessity to the inhabitants of the city, as appears from the complaint and especially from the 10th, 11th, and 13th paragraphs thereof, and the

city will not be restrained by an injunction from using a public work, in order to force the city to pay damages for diversion of sewage water. Because it appears from the complaint that all the acts on the part of the defendant complained of, are being done by the city of Hartford in the construction and management of its own system of sewers, and because polluted sewage water referred to in the complaint is a public nuisance, and by law the city has full right to abate a public nuisance without the payment of damages. Because the plaintiffs have adequate remedy at law by proper action against the city, if any of their rights to water, or to the flow of water into the Park river, shall be taken or injured by the city in consequence of the construction of said intercepting sewer."

Although the record in this case is somewhat voluminous, the facts decisive of it lie in narrow compass, and may be briefly stated as follows :—

The plaintiffs are the owners of a valuable water privilege and mill property on Park river. Prior to the acts complained of the city of Hartford had constructed a system of reservoirs at great expense, to supply itself and its inhabitants with water for domestic and other purposes. This water supply is all taken above the plaintiffs' dam, from brooks, streams and springs which are tributary to Park river, to the entire current and flow of which river, including the water so taken by the city, the plaintiffs are exclusively entitled at their mills. The water so taken by the city is from one third to one half the volume of said river. This water is carried to a distributing reservoir, and thence by leading pipes to the city, where it is sold and distributed to the citizens through service pipes for use ; and after such use is returned in great part to Park river through the sewage system of the city. This has been done ever since the city began to use such water supply, and by reason of such return the plaintiffs thus far have suffered no substantial damage from the use of said water by the city.

The city now proposes to divert all the water thus flowing through its sewerage system as aforesaid into Park river

above the plaintiffs' mills, into a great intercepting sewer which it is engaged in constructing, and by means of such sewer to carry such water directly into the Connecticut river. This, if done, will divert and take away from the plaintiffs' water privilege from one third to one half of the volume of Park river as it has been accustomed to flow there, and will very greatly damage the plaintiffs. It further appears, that, under the Act of 1882 referred to in the complaint, authority was given to the city to do the things set forth in said Act with reference to "any stream, or part of a stream, natural or artificial, running in or through said city;" and also that the city took such action with reference to purchasing or condemning the property of the plaintiffs and appropriating Park river, under the Act of 1882, as is set forth in the complaint and the exhibits which are made a part of it. It further appears that in the opinion of the city authorities the sewage and waste water thus returned to Park river created a nuisance which ought to be abated in some way; and that said authorities finally determined to abate such nuisance by building the intercepting sewer, and through it diverting said waste water and sewage into the Connecticut river.

These are the main controlling facts in the case, and the question is whether upon them the plaintiffs are entitled to the precise relief which they now seek.

If the complaint could be regarded as one brought simply to enjoin the city from taking its water supply or any part of it from the tributaries of Park river, the case thus presented would be a very different one from the present case; but it cannot be so regarded. The complaint is not brought to have the city enjoined from diverting the water of Park river or its tributaries into the reservoirs and distributing pipes of the city, or from using the water so diverted; but it is brought to restrain the city from diverting its sewage into the intercepting sewer; and this is the very gist of the complaint.

The allegations of the complaint are, in effect, that this sewage has heretofore been permitted to flow into Park river, that it is available for use at the plaintiffs' mills, that the

city now intends to divert it into the intercepting sewer past the plaintiffs' mills, that this will greatly lessen the flow of the river to the plaintiffs' damage, that the city has no right to thus divert its sewage from Park river and should be enjoined from doing so until it has paid or satisfied the plaintiffs' damages.

It is true the complaint may be fairly said to allege, in effect, that the city gets its water supply from waters which belong to the plaintiffs, and that it has no right as against the plaintiffs to take and use such water as it does; but the complaint does not ask to have such taking and use enjoined against; it only asks to have the city enjoined from disposing of that water after it has become sewage.

Now it is quite clear that the city either has, or it has not, the right as against the plaintiffs, to take and use the water which constitutes its supply as set forth in the complaint; and in either case we think it is equally clear that the city has the right, as against the plaintiffs, to dispose of that water after it enters the sewerage system as sewage, under its charter, as it sees fit. In other words, the plaintiffs may or may not have the right to have the whole or a part of the water supply of the city returned as water to Park river, but in either case they have no right to have it so returned after it has become sewage, or to have it returned through the sewerage system of the city, which are in effect the rights claimed in the present case.

If the city has the right, as against the plaintiffs, to take and use the water in its reservoirs, then clearly it has the further right, as against them, either before or after it is used, to dispose of it under its charter as it sees fit. If, on the other hand, it has no right as against the plaintiffs to take or use the waters in its reservoirs—which is we think the case stated in the complaint—this fact of itself does not give the plaintiffs a right to control the disposition of such water after it has entered the sewerage system and become sewage. That control still remains with the city, and ought to remain with it.

As the court is bound to take judicial notice of the city

charter (General Statutes, § 1087), we know that full control over its sewerage system and over the disposal of sewage is conferred upon the city ; and there is nothing in the entire record which shows any loss of such control, or which shows that the plaintiffs have any rights which the city is bound to consider in dealing with its sewer system, or in dealing with the disposal of sewage. In this view of the case it makes no difference whether the sewage is or is not injurious to health, or whether its open flow has or has not otherwise become a nuisance ; in either case the city still has, and ought to have, full control over it and the pipes, drains and sewers through which it flows or can be made to flow. If the city wrongfully takes and uses the plaintiffs' water, the remedy for such a wrong is ample, either by an action at law for damages, or in a proper case in equity by injunction ; but where, as in this case, the plaintiffs apparently condone the wrongful taking and using of the water on condition that it shall be allowed to come back to them in the form of sewage through the city sewers, and assert a right to sewage as such, and to have it flow through the sewers as it has been accustomed to flow, they cannot have the remedy which they now seek, simply because they have not shown that they possess any such right.

The complaint clearly shows that it is the sewage of the city, and not the waters of Park river or its tributaries in any proper sense, which the city is about to turn into the intercepting sewer ; and it is this precise diversion and nothing else which the plaintiffs seek to have enjoined. For the reasons given we are of opinion that they are not entitled to the injunction.

In this view of the case the question whether the city, in what it has done or intends to do as alleged in the complaint, is or is not acting under the Act of 1882—a question much discussed upon the argument—becomes of secondary importance. We think however that the record clearly shows that the city is not acting in this matter under the authority conferred by the Act of 1882, but under the provisions of its charter, without regard to that Act. Furthermore, we think

that what the city has done, and what it intends to do, as alleged upon the record, do not constitute a taking or appropriation of Park river or any part of its bed or banks, or of any part of its waters, within the meaning of the Act of 1882; and that its charter gives it full power to do what it has done and intends to do, as these matters are alleged in the complaint.

The Superior Court is advised that the complaint is insufficient.

In this opinion the other judges concurred.