******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE MARSHAL ASSOCIATION OF CONNECTICUT, INC. *v.* ERIN JOHNSON, TAX COLLECTOR OF THE TOWN OF CANTON
## (AC 42131)

DiPentima, C. J., and Elgo and Sullivan, Js.

*Syllabus*

The plaintiff, a voluntary association of deputized state marshals, sought a declaratory judgment that the actions of the defendant J, the tax collector of the town of Canton, in executing a contract with a law firm, P Co., violated certain provisions of the General Statutes (§§ 12-135 (a), 12-155, 12-157, and 12-162). J and P Co. entered into a contract stating that P Co. would assist J with the collection of delinquent tax, utility, and similar accounts. The plaintiff alleged that the legislature has outlined only certain classes of persons who were authorized to collect taxes due to a town, and that J lacked statutory authority to delegate or transfer the power to collect municipal taxes to a third party that did not fall within one of those classes. P Co. intervened as a defendant, and then filed a motion to dismiss, which J joined, claiming that the plaintiff lacked standing to maintain the declaratory action. The trial court granted the motion to dismiss and rendered judgment dismissing the action, and the plaintiff appealed to this court. *Held*:

1. The trial court properly concluded that the plaintiff lacked standing to maintain the declaratory action, as the plaintiff did not establish that its members were classically aggrieved by the challenged conduct: neither the plaintiff's pleadings, nor an affidavit submitted in opposition to the motion to dismiss, provided any basis to conclude that any member of the plaintiff possessed a specific, personal and legal interest with respect to those allegations not shared by the community as a whole, and the plaintiff failed to establish an interest in J's conduct pursuant to §§ 12-155 and 12-157 that was distinguishable from that of the general public; moreover, the plaintiff did not allege specific facts detailing how any of its members were directly injured, nothing in the record indicated that any member of the plaintiff association had ever engaged in the collection of the town's taxes pursuant to §§ 12-135 and 12-162, and the plaintiff furnished no legal authority or factual allegations to substantiate its claim that its members sustained the requisite injury in the form of diminished business opportunities stemming from J's conduct.

2. The trial court properly concluded that the plaintiff lacked standing to maintain the declaratory action, as the plaintiff did not establish that its members were statutorily aggrieved by the challenged conduct: the plaintiff did not allege that one of its members suffered or was likely to suffer an injury as a result of J's conduct, and the plaintiff could not prevail on its contention that the declaratory judgment procedure embodied by statute (§ 52-29) and our rules of practice (§ 17-55) obviated the need for the plaintiff to allege an injury that it suffered or was likely to suffer as a result of the challenged conduct, as our decisional law was replete with instances in which a party seeking a declaratory judgment had been deemed to lack standing due to its failure to allege the requisite injury; moreover, assuming arguendo that our declaratory judgment procedure does not require allegations that the plaintiff was specially and injuriously affected by the challenged conduct, the plaintiff's allegations still fell short of the general considerations that govern declaratory actions because, even if a court were to declare J's conduct improper, it would have resulted in no practical relief to the plaintiff or its members, as J remained under no obligation to contemplate, let alone secure, the services of the plaintiff's members, and, as a result, the case was nonjusticiable, and the plaintiff was not a proper party to request an adjudication on the legal relationship between J and P Co., as any uncertainty as to the plaintiff's legal relations with the defendants or potential harm to the plaintiff was, on the record, merely theoretical.

3. The trial court did not abuse its discretion in denying the plaintiff's motion for reargument and reconsideration; although the plaintiff alleged that the court failed to address its claim of statutory aggrievement, the court,

in its memorandum of decision, relied on Connecticut Supreme Court precedent indicating that, to satisfy the first prong of the associational standing test, a plaintiff must demonstrate how it was harmed in a unique fashion by the challenged conduct and must allege a colorable claim of direct injury, and the court's analysis in this case comported with the standing precepts that our Supreme Court has adhered to in resolving associational standing claims.

Argued November 12, 2019—officially released June 30, 2020

*Procedural History*

Action for a declaratory judgment, brought to the Superior Court in the judicial district of Hartford, where the court, *Schuman, J.*, granted the motion to intervene as a defendant filed by Pullman & Comley, LLC; thereafter, the court, *Hon. A. Susan Peck*, judge trial referee, granted the defendants' motion to dismiss and rendered judgment thereon; subsequently, the court denied the plaintiff's motion to reargue and for reconsideration, and the plaintiff appealed to this court. *Affirmed.*

*Andrew P. Barsom*, for the appellant (plaintiff).

*James J. Healy*, with whom were *Barbara Curatolo*, and, on the brief, *Thomas J. Murphy*, for the appellee (intervening defendant).

*Laura Pascale Zaino*, with whom, on the brief, was *Michael C. Collins*, for the appellee (named defendant).

*Opinion*

ELGO, J. The plaintiff, State Marshal Association of Connecticut, Inc., appeals from the judgment of the trial court dismissing its declaratory action against the defendants, Erin Johnson, the tax collector of the town of Canton (town), and Pullman & Comley, LLC (Pullman).[1] On appeal, the plaintiff claims that the court improperly (1) concluded that it lacked standing to maintain the action and (2) denied the plaintiff's motion seeking reargument and reconsideration. We affirm the judgment of the trial court.

The procedural posture of this case governs our recitation of the facts underlying the appeal. "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Traylor* v. *State*, 332 Conn. 789, 792–93 n.6, 213 A.3d 467 (2019).

The plaintiff is a voluntary association that was formed in April, 2017. It is comprised of deputized state marshals who, inter alia, are statutorily authorized to execute, enforce and collect taxes due to municipalities in this state. At all relevant times, Johnson was the duly appointed tax collector for the town.

On May 23, 2017, Johnson executed an engagement letter (contract) prepared by Pullman, a Connecticut law firm. With respect to the "[s]cope of [r]epresentation," the contract states in relevant part: "You have asked us to provide . . . assistance relating to the collection of delinquent tax, utility, and similar accounts. These collection efforts are expected to primarily include demand letters and property auctions under [General Statutes] §§ 12-155 and 12-157, but may also include litigation, bank levies, bankruptcy claims, or other mechanisms . . . . You will retain full discretion over which accounts you choose to refer to [us] for collection. For those accounts, you . . . deputize and authorize us to prepare, sign, and serve demands, warrants, notices, bank account inquiries, and similar documents on the [tax] collector's behalf and to endorse and process the payments we receive for you. You agree to recall all warrants given to marshals, all accounts given to debt collection agencies, and otherwise ensure that no third party will be authorized by you to simultaneously attempt to collect the same delinquencies you refer to [Pullman]."[2]

The plaintiff commenced the present action in December, 2017. Its complaint named Johnson, in her

official capacity, as the sole defendant and contained four counts, which sought a judgment declaring that her actions in executing the contract violated the plain language of General Statutes §§ 12-135 (a), 12-155, 12-157, and 12-162 respectively. The salient portions of the plaintiff's complaint allege that the legislature has outlined only three classes of persons who are authorized to collect taxes due to the town: (1) the municipal tax collector; (2) any state marshal; and (3) any constable. The plaintiff thus alleged that Johnson lacked statutory authority to delegate or transfer the power to collect municipal taxes to a third party that does not fall within one of those classes.

Days after that action was filed, Pullman filed a motion to intervene as a defendant due to its status as "a party to the contract at issue," which the court granted. Pullman then filed a motion to dismiss on February 27, 2018, which Johnson joined,[3] claiming that the plaintiff lacked standing to maintain the declaratory action. More specifically, the defendants alleged that neither the plaintiff nor any of its members were a party to the contract and had not "suffered any injury from the . . . hiring [of Pullman] to provide . . . legal advice and assistance." The plaintiff filed an opposition to that motion, claiming that it was both classically and statutorily aggrieved by Johnson's execution of the contract with Pullman. The defendants filed a reply to that opposition.

The court heard argument on the motion to dismiss on April 23, 2018. In its subsequent memorandum of decision, the court concluded that the plaintiff was not aggrieved, stating in relevant part: "[T]he plaintiff's argument centers on its members' status as one of three classes authorized to collect taxes: tax collectors, marshals, and constables. Because [Pullman] does not fall under one of these three categories, the plaintiff maintains that it has a 'concrete and equitable interest' to bring the present action. Specifically, the plaintiff points to the language of the contract entered into by the defendants to show that marshals could potentially have their assigned warrants to collect recalled by Johnson, thus causing an injury which confers standing. However, the plaintiff does not allege that any member has suffered such an injury as a result of the contract. Additionally, the plaintiff does not allege that any of its members ever acted on behalf of a tax collector in [the town] previously, or had the expectation of doing so going forward, which might show a colorable potential for injury. Rather, the facts as alleged demonstrate that the plaintiff is in the same position currently as it would be if Johnson decided to pursue the other two options statutorily available under § 12-135 (a), that is, handling collections personally in her capacity as tax collector or by utilizing a constable. Consequently, the plaintiff has not alleged a unique harm suffered. It has no interest distinguishable from that of the general public, and

thus, lacks standing." (Footnotes omitted.) The court therefore rendered judgment dismissing the plaintiff's action.

In its memorandum of decision, the court did not distinctly address the plaintiff's claim of statutory aggrievement. As a result, the plaintiff filed a motion seeking reargument and reconsideration on that basis, which the court summarily denied. The plaintiff then sought an articulation of the court's reasoning for that denial, which the court also denied. This appeal followed.[4]

I

On appeal, the plaintiff claims that the court improperly determined that it lacked standing to maintain the present action. We disagree.

It is well established that "a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013).

"When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Internal quotation marks omitted.) *State* v. *Long*, 268 Conn. 508, 531, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). "Because standing implicates the court's subject matter jurisdiction, the plaintiff . . . bears the burden of establishing standing." *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005); see also *Browning* v. *Van Brunt, DuBiago & Co., LLC*, 330 Conn. 447, 460, 195 A.3d 1123 (2018) (party seeking exercise of jurisdiction in its favor bears burden to allege facts demonstrating that it is proper party to invoke judicial resolution of dispute). Our

review of the question of the plaintiff's standing is plenary.[5]  See *Weiss* v. *Smulders*, 313 Conn. 227, 239, 96 A.3d 1175 (2014).

The sole plaintiff in the present case is an association comprised of state marshals. Accordingly, our analysis begins with the question of associational standing.

In the seminal case of *Hunt* v. *Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977), the United States Supreme Court articulated a three part test to determine whether an association possesses standing to maintain an action. It held that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id., 343. Our Supreme Court subsequently "adopted that test as a matter of Connecticut law." *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 185, 740 A.2d 813 (1999).

In the present case, the second and third prongs of that test plainly are met. In opposing the motion to dismiss, the plaintiff submitted the sworn affidavit of Lisa Stevenson, a state marshal and the advisor board chair of the plaintiff. In that affidavit, Stevenson stated in relevant part that the plaintiff was formed on April 13, 2017, approximately eight months before the commencement of this action, at which time its corporate bylaws were adopted. Those bylaws, Stevenson continued, indicate that its purpose is to "organize the [m]arshals, empowering them through a democratic decision-making and direct action to address the issues affecting the group."[6] (Internal quotation marks omitted.) Stevenson further averred that the claims asserted in the present action were ones "affecting [the] [p]laintiff's members" and had been authorized by a vote of those members in accordance with its bylaws. The substance of those averments was not disputed by the defendants in the proceeding in the trial court.[7] Mindful of our obligation to indulge every presumption favoring jurisdiction, we conclude that the plaintiff sufficiently demonstrated that the interests it seeks to protect through this litigation are germane to the association's purpose. Furthermore, there is no indication that this declaratory action required the participation of the plaintiff's members, nor have the defendants so argued in this appeal. Indeed, our Supreme Court has held to the contrary. See *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 617, 508 A.2d 743 (1986) (because plaintiff was seeking declaratory judgment, "neither the claim asserted nor the relief requested" required participation of individual members of plaintiff association).

The remaining question under the first prong of the associational standing test is whether the plaintiff's members would have standing to pursue this declaratory action in their own right. To meet that prong, an association must demonstrate aggrievement on the part of its members. See *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 434–37, 829 A.2d 801 (2003) (applying traditional aggrievement precepts to resolve question of associational standing); *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 218 Conn. 335, 343–48, 589 A.2d 356 (1991) (same); *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 299–305, 524 A.2d 636 (1987) (same). An association satisfies that burden by establishing that at least one of its members is aggrieved by the action in question. See, e.g., *Connecticut Associated Builders & Contractors* v. *Hartford*, supra, 251 Conn. 186 (concluding that first prong of associational standing test was not satisfied because "the association did not show that any of its . . . members" were aggrieved); *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, supra, 304–305 (concluding that first prong of associational standing test was satisfied by showing that one member of plaintiff association was aggrieved). Accordingly, resolution of the question of the plaintiff's associational standing hinges on whether the plaintiff has established that one of its members is aggrieved.

"It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted; internal quotation marks omitted.) *Trikona Advisers Ltd.* v. *Haida Investments Ltd.*, 318 Conn. 476, 485–86, 122 A.3d 242 (2015). We address each type of aggrievement in turn.

A

Classical Aggrievement

On appeal, the plaintiff contends that the court improperly concluded that it was not classically aggrieved by Johnson's conduct in executing the con-

tract with Pullman. To resolve that claim, the specific allegations of the four counts of the plaintiff's complaint require closer scrutiny.

### 1

### Counts Two and Three

To establish classical aggrievement, the plaintiff first "must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole." (Internal quotation marks omitted.) *Browning* v. *Van Brunt, DuBiago & Co., LLC*, supra, 330 Conn. 455. We conclude that the plaintiff has failed to do so with respect to the second and third counts of its complaint.

Counts two and three pertain to a tax collector's authority under §§ 12-155 and 12-157, respectively.[8] In both counts, the plaintiff alleges that Johnson lacked authority "to deputize or empower any party other than [Johnson] herself" to take action thereunder.[9] Neither the plaintiff's pleadings nor the affidavit submitted in opposition to the motion to dismiss provides any basis to conclude that any member of the plaintiff possesses a specific, personal and legal interest with respect to those allegations that is not shared by the community as a whole. Although the plaintiff broadly asserts an interest in "declaring the invalidity of [Johnson's] actions" pursuant to §§ 12-155 and 12-157, such a conclusory statement does not satisfy the first prong of the classical aggrievement test. See, e.g., *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 542–43, 833 A.2d 883 (2003) (mere statement that appellant is aggrieved insufficient without supporting allegations describing particular nature of aggrievement); *Concerned Citizens for the Preservation of Watertown, Inc.* v. *Planning & Zoning Commission*, 118 Conn. App. 337, 342, 984 A.2d 72 (2009) ("conclusory statements do not satisfy the appellant's burden of proving aggrievement"), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010). Indeed, any taxpayer in the town could levy the same complaint as that advanced by the plaintiff here. Because the plaintiff has not established an interest in Johnson's conduct pursuant to §§ 12-155 and 12-157 that is distinguishable from that of the general public, its claim of classical aggrievement under counts two and three necessarily fails. See *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, supra, 218 Conn. 348.

### 2

### Counts One and Four

### a

### First Prong of Classical Aggrievement

We reach a different result with respect to counts one

and four of the plaintiff's complaint. In those counts, the plaintiff alleges that it belongs to one of only three classes of persons that the legislature has authorized to effectuate tax collections pursuant to §§ 12-135 and 12-162.[10]

In count one, the plaintiff alleges that "[t]he plain and unambiguous text of [§] 12-135 does not provide any authority for [Johnson] to deputize or empower any party other than herself, a state marshal or a constable to execute a tax warrant or seek to collect any taxes due to the [municipality]. [Johnson's] actions in purporting to deputize a third party which is not one of the three legislatively designated classes of persons statutorily authorized to execute and/or act upon a tax warrant for collection of taxes due to the [municipality] is contrary to the plain language of [the statute]." The plaintiff thus alleges that it "has a concrete legal and equitable interest in the [c]ourt determining the validity of [Johnson's] actions in delegating authority to execute tax warrants and seek to collect on taxes due to the [municipality] as members of one of the three statutorily designated classes of persons authorized to act on behalf of the [municipality] pursuant to [§] 12-135 (a)."

In count four, the plaintiff similarly alleges that "[t]he explicit and unambiguous text of [§] 12-162 does not, anywhere within its terms, provide any authority for [Johnson] to deputize or empower any party other than [Johnson] herself, a state marshal and/or a constable to execute an alias tax warrant; financial institution warrant; or a request for information directed to a financial institution on behalf of the [municipality]. [Johnson's] actions in purporting to deputize a third party which is not one of the three legislatively designated classes of persons statutorily authorized to execute and serve an alias tax warrant is contrary to the plain language of [§] 12-162. . . . The [plaintiff] has a concrete legal and equitable interest in the court declaring the invalidity of [Johnson's] actions as one of the three statutorily designated classes of persons authorized to act pursuant to [§] 12-162."

We conclude that, unlike counts two and three of the complaint, counts one and four allege a specific, personal and legal interest in the subject matter of the challenged action that is distinguishable from a general interest shared by the community as a whole. In those counts, the plaintiff claims membership in a narrow class of persons authorized by the legislature, in enacting §§ 12-135 and 12-162, to engage in tax collection on behalf of municipalities, which legislative imperative Johnson allegedly contravened in executing the contract at issue. Broadly construed, the allegations of counts one and four satisfy the first prong of the classical aggrievement test.

### Second Prong of Classical Aggrievement

We, therefore, must consider the second prong of the classical aggrievement test, which requires the plaintiff to demonstrate how Johnson's execution of the contract with Pullman "resulted in a direct injury to [it]." *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 707, 960 A.2d 563 (2008). The plaintiff does not allege specific facts detailing how any of its members were directly injured, nor do the words "injury," "injured," or their ilk appear anywhere in the complaint.

On appeal, the plaintiff submits that the injury emanating from its complaint is "damage" to its members' "rights for appointment to collect municipal taxes . . . ." (Internal quotation marks omitted.) In response, the defendants maintain that the plaintiff has not alleged any factual basis on which a court could conclude that one of its members was directly injured by Johnson's conduct in the present case. We agree with the defendants.

The injury requirement of the classical aggrievement test is well established. Under our law, "the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Mindful that it is a fundamental concept of judicial administration that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer . . . [a plaintiff is] required to plead and prove some injury in accordance with our rule on aggrievement." (Internal quotation marks omitted.) *Mayer* v. *Historic District Commission*, 325 Conn. 765, 781, 160 A.3d 333 (2017); see also *Fleet National Bank's Appeal from Probate*, 267 Conn. 229, 253, 837 A.2d 785 (2004) ("a party sufficiently has demonstrated classical aggrievement upon a showing of direct injury to a legally protected interest"). In the specific context of declaratory actions, the appellate courts of this state likewise have held that a party who had not "demonstrated how she was harmed in a unique fashion" by the challenged conduct failed to establish "a colorable claim of *direct* injury," and, accordingly, lacked standing to maintain the action. (Emphasis in original.) *Monroe* v. *Horwitch*, 215 Conn. 469, 473, 576 A.2d 1280 (1990); see also *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 224–25, 105 A.3d 210 (2014) (standing in declaratory action requires allegations of injury that plaintiff has suffered or is likely to suffer); *Wilson* v. *Kelley*, 224 Conn. 110, 121, 617 A.2d 433 (1992) (noting "the necessary injury to maintain a declaratory action"); *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 613 (standing requires "some direct injury for which the plaintiff seeks redress" (internal quotation marks omitted)); *Stefanoni* v. *Dept. of Economic & Community Development*, 142 Conn.

App. 300, 318, 70 A.3d 61 ("the plaintiffs here do not have a direct injury that would allow them to maintain this action" and "have not shown a direct, unique injury resulting from" challenged conduct), cert. denied, 309 Conn. 907, 68 A.3d 661 (2013); *Smigelski* v. *Kosiorek*, 138 Conn. App. 728, 739, 54 A.3d 584 (2012) (court properly dismissed declaratory action when plaintiff failed to allege how he was specially and injuriously affected by challenged conduct), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013).

Our Supreme Court has emphasized that fundamental tenet in analyzing a claim of associational standing. In *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 265 Conn. 425, the plaintiff association sought a declaratory ruling regarding certain conduct of the defendant city. Like the present case, the plaintiff's complaint in *Fort Trumbull Conservancy, LLC* contained general assertions of statutory violations, but no allegations of specific and direct injury to the plaintiff's members. As our Supreme Court explained: "[W]e conclude that the trial court properly determined that the plaintiff has failed to demonstrate classical aggrievement. Although the plaintiff alleges in its complaint . . . that the defendants' actions violated, inter alia, the constitutional and statutory rights of its members, the complaint contains no allegation of any specific and direct injury that the plaintiff's members have suffered or are likely to suffer as a result of these alleged constitutional infirmities and [statutory] violations. In other words, the plaintiff has failed to demonstrate how its members have been 'specially and injuriously affected' by the defendants' conduct." Id., 435. The court continued: "The complaint . . . contains no allegation that *any member of the plaintiff* was 'imminently threatened' by the city's [conduct]. . . . Inasmuch as the complaint contains insufficient facts from which it reasonably may be inferred that any of the plaintiff's members have suffered or are likely to suffer any direct and specific injury as a result of the implementation of the development plan, the plaintiff's claim of classical aggrievement must fail." (Emphasis in original; footnote omitted.) Id., 436. Accordingly, the court held that the trial court properly dismissed the plaintiff's declaratory action. Id., 436–37.

That precedent compels a similar conclusion here. The plaintiff's complaint does not allege that any of its members have ever worked with the town or its tax collector to collect municipal taxes. There also is no allegation that any members of the plaintiff ever offered their services to the town or its tax collector. Although the contract at issue states in relevant part that Johnson would "recall all warrants given to marshals" regarding tax delinquencies referred to Pullman, the plaintiff has not alleged that Johnson ever issued any warrants to one of its members or that one of its members had such a warrant recalled pursuant to the terms of the contract.

In short, nothing in the record indicates that any member of the plaintiff association *ever* has engaged in the collection of the town's taxes pursuant to the statutes in question.

On appeal, the plaintiff contends that implicit in its complaint is an allegation that its members sustained the requisite injury in the form of diminished business opportunities stemming from Johnson's conduct. It has furnished no legal authority or factual allegations to substantiate that claim. To the contrary, our Supreme Court has held that "a diminished possibility of potential work" was "too attenuated" and did not suffice to establish a direct injury on the part of the members of the plaintiff association. *Connecticut Associated Builders & Contractors* v. *Hartford*, supra, 251 Conn. 182–86. That precedent informs our analysis in the present case. The plaintiff's members are but one "of several means" by which a municipality may seek to collect delinquent taxes. *O'Brien-Kelley, LTD* v. *Goshen*, 190 Conn. App. 420, 423, 210 A.3d 641 (2019). Pursuant to §§ 12-135 and 12-162, municipal tax collectors such as Johnson are under no obligation to procure the services of the plaintiff's members. Because the plaintiff's complaint lacks any factual allegation that one of its members has ever provided tax collection services to the town's tax collector, their purported harm is but conjecture and too attenuated to constitute the requisite injury.[11] See *State* v. *Dixon*, 114 Conn. App. 1, 9, 967 A.2d 1242 ("aggrievement or standing to appeal requires something more than conjecture or speculation of injury"), cert. denied, 292 Conn. 910, 973 A.2d 108 (2009); *Goldfisher* v. *Connecticut Siting Council*, 95 Conn. App. 193, 198, 895 A.2d 286 (2006) ("mere speculation that harm may ensue is not an adequate basis for finding aggrievement"); see also *Clapper* v. *Amnesty International USA*, 568 U.S. 398, 416, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

As in *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 265 Conn. 435, the complaint here alleges statutory violations on the part of Johnson, but contains no allegation of any specific and direct injury that the plaintiff's members have suffered or are likely to suffer. Because the plaintiff has not established that Johnson's conduct specially and injuriously affected its members; see *Mayer* v. *Historic District Commission*, supra, 325 Conn. 781; its claim flounders on the second prong of the classical aggrievement test.

B

Statutory Aggrievement

The plaintiff also alleges that its members are statutorily aggrieved by Johnson's conduct. "Statutory

aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who *claim injury* to an interest protected by that legislation." (Emphasis added; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 803, 925 A.2d 292 (2007).

1

### Declaratory Judgment Procedure

The plaintiff's claim of statutory aggrievement is predicated on General Statutes § 52-29,[12] our declaratory judgment statute, and the implementing rule of practice, Practice Book § 17-55.[13] Distilled to its essence, the plaintiff's claim is that declaratory actions in this state are governed by a relaxed aggrievement standard that does not require allegations of injury. The precedent of our Supreme Court indicates otherwise.

In *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, supra, 218 Conn. 346, a case concerning associational standing, the plaintiffs raised a nearly identical claim, contending that "the declaratory judgment provisions of § 52-29 (a) and Practice Book § 390 [now § 17-55] are more lenient as to standing . . . ." (Footnotes omitted.) In rejecting that claim, our Supreme Court reiterated the fundamental requirement that an association must demonstrate that its members had "standing to seek declaratory judgments because they allege direct, personal injury resulting from the conduct challenged by the association." (Internal quotation marks omitted.) Id. The court further noted that a plaintiff "who has not demonstrated how she was harmed in a unique fashion by the conduct she had challenged in a declaratory judgment action had failed to establish a colorable claim of *direct* injury, and accordingly lacked standing to maintain the action." (Emphasis in original; internal quotation marks omitted.) Id., 348; see also *Andross* v. *West Hartford*, 285 Conn. 309, 326–27, 330, 939 A.2d 1146 (2008) (quoting aforementioned language from *Connecticut Business & Industry Assn., Inc.*, and stating that "the principle on which this court relied . . . has deep roots in our common-law jurisprudence"). The plaintiff has not acknowledged that precedent in either its principal appellate brief or its reply brief to this court.[14]

That Supreme Court precedent is not groundbreaking but, rather, is consistent with the great weight of appellate authority in this state that requires a plaintiff pursuing a declaratory judgment action to allege an injury resulting from the challenged conduct. See, e.g., *Financial Consulting, LLC* v. *Commissioner of Ins.*, supra, 315 Conn. 224–25 (standing in declaratory action requires allegations of injury that plaintiff has suffered or is likely to suffer); *Travelers Casualty & Surety Co.*

*of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 728, 737, 95 A.3d 1031 (2014) (noting that standing in declaratory action requires colorable claim of injury and concluding that plaintiff's "claim of injury [is] more than colorable"); *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 814, 967 A.2d 1 (2009) (plaintiff pursuing declaratory judgment must demonstrate that case does not present hypothetical injury); *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 265 Conn. 436 (declaratory action properly dismissed for lack of "classical or statutory aggrievement" because plaintiff's complaint contained "insufficient facts from which it reasonably may be inferred that any of the plaintiff's members have suffered or are likely to suffer any direct and specific injury as a result" of challenged conduct); *Wilson* v. *Kelley*, supra, 224 Conn. 121 (recognizing "the necessary injury to maintain a declaratory action"); *Monroe* v. *Horwitch*, supra, 215 Conn. 473 (plaintiff in declaratory action must demonstrate "how she was harmed in a unique fashion" by challenged conduct); *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 613 (noting basic principle that plaintiffs must have standing for court to have jurisdiction to render declaratory judgment and emphasizing that standing requires "some direct injury for which the plaintiff seeks redress" (internal quotation marks omitted)); *Emerick* v. *Commissioner of Public Health*, 147 Conn. App. 292, 297, 81 A.3d 1217 (2013) (plaintiff who has not demonstrated how he or she was harmed in unique fashion by challenged conduct in declaratory judgment action lacks standing because he or she failed to establish colorable claim of direct injury), cert. denied, 311 Conn. 936, 88 A.3d 551 (2014); *Stefanoni* v. *Dept. of Economic & Community Development*, supra, 142 Conn. App. 318 ("the plaintiffs here do not have a direct injury that would allow them to maintain this [declaratory] action" and "have not shown a direct, unique injury resulting from" challenged conduct); *Smigelski* v. *Kosiorek*, supra, 138 Conn. App. 739 (court properly dismissed declaratory action when plaintiff failed to allege how he was specially and injuriously affected by challenged conduct); *Pascarella* v. *Commissioner of Revenue Services*, 119 Conn. App. 771, 774, 989 A.2d 1092 (noting that statutory aggrievement involves claim that "particular legislation grants standing to those who *claim injury* to an interest protected by that legislation" (emphasis added; internal quotation marks omitted)), cert. denied, 296 Conn. 904, 992 A.2d 329 (2010).

In *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 673 A.2d 484 (1996), our Supreme Court discussed in detail the necessity of allegations of injury in order to establish the standing of an association seeking a declaratory judgment. In that case, the plaintiff association sought a declaratory judgment that the defendants had violated certain statutes.

Id., 458. On appeal, the defendants challenged the trial court's determination that the plaintiff possessed standing to maintain that action. Id., 463. The Supreme Court began its analysis by reiterating the familiar precept that "[t]he requirements of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. . . . As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great." (Citation omitted; internal quotation marks omitted.) Id., 463–64.

After setting forth the three part test for associational standing; see *Hunt* v. *Washington State Apple Advertising Commission*, supra, 432 U.S. 343; *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 616; the court stated that the defendants were challenging "only the first prong of the test," which requires a showing that the association's members would otherwise have standing to sue in their own right. *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, supra, 236 Conn. 464–65. The court then noted that the defendants relied "on *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), wherein the United States Supreme Court set forth a three part test to determine individual standing [that focused on the injury allegedly sustained]. First, a plaintiff must demonstrate an injury in fact, that is, an invasion of a legally protected interest that is concrete and particularized and actual or imminent rather than conjectural or hypothetical. . . . Second, there must be a causal connection between the defendants' conduct and the alleged injury. The injury must be fairly . . . trace[able] to the challenged action of the defendant[s], and not . . . th[e] result [of] the independent action of some third party not before the court. . . . Third, the alleged injury will likely, rather than speculatively, be redressed by a favorable decision." (Citations omitted; internal quotation marks omitted.) *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, supra, 465. In response, the plaintiff argued that "because *Lujan* is a plurality opinion and has not yet been relied upon by Connecticut courts, it does not govern." Id., 465 n.9.

Our Supreme Court disagreed, stating that "[t]here is little material difference between what we have required and what the United States Supreme Court in *Lujan* demanded of the plaintiff to establish standing." Id., 466 n.10. The court emphasized that, under Connecticut law, "[s]tanding requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by *allegations* of injury." (Emphasis in original; internal quotation marks omitted.) Id., 466. The court then proceeded to analyze the first prong of the associational standing test in accordance with both *Lujan* and Connecticut's well established classical

aggrievement standard. See id., 466–68 (concluding that "[t]he infringement of the rights of the plaintiff's members . . . was concrete and particularized as well as actual and imminent" and emphasizing that "the plaintiff's members . . . are not merely members of the general public who have failed to demonstrate how they have been harmed in some unique way"). This precedent of our Supreme Court further convinces us that an association must allege the requisite injury to one of its members in order to establish its standing to maintain a declaratory judgment action under the associational standing test.

The declaratory judgment procedure memorialized in § 52-29 and Practice Book § 17-55 "provides a valuable tool by which litigants may resolve uncertainty of legal obligations." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 625, 822 A.2d 196 (2003). At the same time, "[a] declaratory judgment action is not . . . a procedural panacea for use on all occasions, but, rather, is limited to solving *justiciable* controversies. . . . Invoking § 52-29 does not create jurisdiction where it would not otherwise exist." (Citation omitted; emphasis added; internal quotation marks omitted.) Id. As our Supreme Court recently observed, "[t]he declaratory judgment procedure, governed by § 52-29 and Practice Book § 17-54 et seq., does not relieve the plaintiff from justiciability requirements." *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 524, 187 A.3d 1154 (2018); accord *Financial Consulting, LLC* v. *Commissioner of Ins.*, supra, 315 Conn. 225 ("[t]he declaratory judgment procedure . . . may be employed only to resolve a justiciable controversy" (internal quotation marks omitted)); *Wilson* v. *Kelley*, supra, 224 Conn. 121 ("[o]ur doctrines of standing and aggrievement obligate us to avoid adjudicating rights in a vacuum"); *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd*, 197 Conn. 554, 558, 499 A.2d 797 (1985) ("[i]t is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment"). As an intermediate appellate tribunal, this court is not at liberty to modify, reconsider, or overrule that precedent. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010), and case law cited therein.

Accordingly, plaintiffs pursuing a declaratory judgment must satisfy the prerequisites of justiciability. "[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 537–38, 46 A.3d 102 (2012). Our well established standing jurisprudence, in turn, requires allegations of injury. See, e.g., *Edgewood*

*Village, Inc.* v. *Housing Authority*, 265 Conn. 280, 288, 828 A.2d 52 (2003) (standing requires showing that plaintiff has been specially and injuriously affected), cert. denied, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004); *Taylor* v. *Commissioner of Correction*, 137 Conn. App. 135, 141, 47 A.3d 466 ("because the plaintiff has failed to identify a legally protected interest that has been specially and injuriously affected, we conclude that he lacks standing to bring the present action"), cert. denied, 307 Conn. 927, 55 A.3d 569 (2012); *Johnson* v. *Rell*, 119 Conn. App. 730, 737, 990 A.2d 354 (2010) ("[a]n allegation of injury is both fundamental and essential to a demonstration of standing"). For that reason, our decisional law is replete with instances in which a party seeking a declaratory judgment has been deemed to lack standing due to its failure to allege the requisite injury. We therefore cannot agree with the plaintiff's contention that the declaratory judgment procedure embodied in § 52-29 and Practice Book § 17-55 obviates the need for a plaintiff to allege an injury that it suffered or is likely to suffer as a result of the challenged conduct.[15] Because the plaintiff has not alleged that one of its members has suffered or is likely to suffer an injury as a result of Johnson's conduct, we conclude that it lacks standing to maintain this declaratory judgment action.

2

General Considerations

Even if we were to conclude otherwise, the plaintiff still could not prevail. Assuming arguendo that our declaratory judgment procedure does not require allegations that the plaintiff was specially and injuriously affected by the challenged conduct, the allegations of the plaintiff's complaint still fall short of the general considerations that govern declaratory actions.

a

Practical Relief

An essential prerequisite to the court's jurisdiction over a declaratory judgment action is that "the determination of the controversy must be capable of resulting in practical relief to the complainant." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 263 Conn. 626. That prerequisite is lacking in the present case. Even if a court of this state were to declare Johnson's conduct in executing the contract with Pullman improper, it would result in no practical relief to the plaintiff or its members, as Johnson remains under no obligation to contemplate, let alone secure, the services of the plaintiff's members. Compare *Peterson* v. *Norwalk*, 150 Conn. 366, 382, 190 A.2d 33 (1963) (plaintiff entitled to declaration of validity of city's contract to maintain bridge, even though city had not yet been called on to expend funds for such maintenance; "contractual obligation to do so in the future is there now, even if

some unforeseen event may alter or eliminate it") with *Manchester* v. *Rogers Paper Mfg. Co.*, 121 Conn. 617, 632, 186 A. 623 (1936) (insufficient reason for declaration of rights when serious doubt whether defendant ever will be called upon to make payment). Apart from offering guidance on the statutory issue before it, the court here could provide "nothing more than . . . an advisory opinion" to the plaintiff and other interested parties. See *Mendillo* v. *Tinley, Renehan & Dost, LLP*, supra, 329 Conn. 527. As a result, the present case is nonjusticiable.

b

Legal Relationship between Defendants

It long has been the law of this state that a declaratory judgment action "does not lie merely to secure advice on the law." *McGee* v. *Dunnigan*, 138 Conn. 263, 268, 83 A.2d 491 (1951). Accordingly, our rules of practice require a plaintiff seeking a declaratory judgment to establish, inter alia, that "(1) [it] has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations; [and] (2) [t]here is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties . . . ." Practice Book § 17-55; see also *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, supra, 312 Conn. 726; *Wilson* v. *Kelley*, supra, 224 Conn. 115. In the present case, there is no uncertainty as to the rights of the plaintiff's members under §§ 12-135 and 12-162—a municipal tax collector is permitted, but not obligated, to utilize their services for tax collection purposes. The plaintiff has provided this court with no authority to the contrary.

In addition, there is no uncertainty as to the plaintiff's legal relations with Johnson. The plaintiff's members are but one "of several means" by which Johnson, or any municipal tax collector in this state, may seek to collect delinquent taxes pursuant to the General Statutes. *O'Brien-Kelley, LTD* v. *Goshen*, supra, 190 Conn. App. 423. There also is no uncertainty as to the plaintiff's legal relations with Pullman, as it was not a party to the contract in question and possesses no legal relationship therewith.

Rather, the true dispute in the present case does not involve the plaintiff or its members at all. It concerns the legal relationship between the defendants, a municipal tax collector and a law firm that was engaged to assist in tax collection efforts. As was the case in *Lovell* v. *Stratford*, 7 Conn. Supp. 255, 258 (1939), "there is no uncertainty as to the legal relations *between the plaintiff and* [*the*] *defendants* which require[s] settlement. . . . It seems apparent therefore that the plaintiff is in no position to hail these defendants into court for a purpose not to settle any legal relations between

him and them, but for an apparent purpose of having the defendants settle differences, if any, existing among themselves." (Emphasis added.) In *Lovell*, the court relied on the familiar maxim that "to maintain a bill for a declaratory judgment it should appear that the plaintiff has *present* rights against . . . the persons whom he makes parties defendants to the proceedings . . . ." (Emphasis altered.) Id., 257; accord *Costantino* v. *Skolnick*, 294 Conn. 719, 738, 988 A.2d 257 (2010) (party "impermissibly sought a declaratory judgment, not to settle a present controversy, but rather to avoid one in the future" [internal quotation marks omitted]); *Milford Power Co., LLC* v. *Alstom Power, Inc.*, supra, 263 Conn. 629 (emphasizing that declaratory action is proper only when commenced "to settle a present controversy" and dismissing action in that case because "[c]onduct by the defendants that could form the foundation for a real controversy between the parties . . . had not moved beyond the theoretical"). In the present case, any uncertainty as to the plaintiff's legal relations with the defendants or potential harm to the plaintiff is, on the record before us, merely theoretical.

In challenging the propriety of the legal relationship between the defendants, the plaintiff relies on a formal opinion issued by the attorney general in 1992, which concluded that "municipalities may utilize independent contractors to assist municipal tax collectors in collecting delinquent taxes, but only for the limited purpose of making personal or written demand on delinquent taxpayers under [§] 12-155."[16] Opinions, Conn. Atty. Gen. No. 1992-018 (June 29, 1992) p. 4; see generally *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care*, 200 Conn. 133, 143, 509 A.2d 1050 (1986) ("[a]lthough an opinion of the attorney general is not binding on a court, it is entitled to careful consideration and is generally regarded as highly persuasive"). In light of that authority, we agree with the plaintiff that a substantial question exists as to whether third parties such as Pullman are statutorily authorized to engage in municipal tax collection services pursuant to §§ 12-135 (a) and 12-162.

That determination, however, has little bearing on the present inquiry, as the issue before this court remains the standing of the plaintiff association. "The fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and *not* on the issues he wishes to have adjudicated. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Emphasis added; internal quotation marks omitted.) *Tremont Public Advisors, LLC* v. *Connecticut Resources Recovery Authority*, 333 Conn. 672, 689, 217 A.3d 953 (2019). Pursuant to our rules of practice and our decisional law, the critical question is not whether a substantial question exists in the abstract; the ques-

tion is whether one exists that requires settlement between the parties. Practice Book § 17-55; *McAnerney* v. *McAnerney*, 165 Conn. 277, 283, 334 A.2d 437 (1973) (to maintain a declaratory judgment action, plaintiff must allege "facts showing [that the substantial question] requires settlement between the parties"). Because the settlement of the statutory question presented in this case would result in no practical relief to the plaintiff, and because the plaintiff has established no harm resulting from Johnson's conduct, that requirement is not met. In light of the foregoing, we conclude that the plaintiff is not a proper party to request an adjudication on the legal relationship between Johnson and Pullman.[17]

C

Aggrievement Conclusion

At oral argument before this court, the plaintiff's counsel described the present action as a "test case" and an "attempt to set a precedent" that could be used in instances involving other municipalities. While we understand the plaintiff's desire to secure advice on this particular statutory question, "[a] declaratory judgment action is not . . . a procedural panacea for use on all occasions, but, rather, is limited to solving justiciable controversies." (Internal quotation marks omitted.) *Mendillo* v. *Tinley, Renehan & Dost, LLP*, supra, 329 Conn. 524; accord *Tilcon Connecticut, Inc.* v. *Commissioner of Environmental Protection*, 317 Conn. 628, 653 n.23, 119 A.3d 1158 (2015) ("a declaratory judgment action must not be used as a convenient route for procuring an advisory opinion" (internal quotation marks omitted)); cf. *Costantino* v. *Skolnick*, supra, 294 Conn. 738 (noting that party pursuing declaratory judgment conceded at oral argument that it was "seeking a 'black letter' ruling, applicable to all insurance companies and policyholders" and holding that "[s]uch a determination . . . is too abstract to be determined properly by a court").

In the present case, the plaintiff has not established that its members are either classically or statutorily aggrieved by the challenged conduct. Its claim of standing, therefore, fails the first prong of the associational standing test. See *Hunt* v. *Washington State Apple Advertising Commission*, supra, 432 U.S. 343 (articulating test); *Connecticut Associated Builders & Contractors* v. *Hartford*, supra, 251 Conn. 186 (concluding that first prong of associational standing test not satisfied because "the association did not show that any of its . . . members" were aggrieved). Accordingly, the trial court properly concluded that the plaintiff lacked standing to maintain this declaratory action.

II

The plaintiff also argues that the court improperly denied its motion for reargument and reconsideration.

That claim is without merit.

Such a motion "is proper when intended to demonstrate to the court that there is some . . . principle of law which would have a controlling effect, and which has been overlooked . . . . Reargument is also meant for situations where there has been a misapprehension of facts. . . . Reargument may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Citations omitted; internal quotation marks omitted.) *Carriage House I-Enfield Assn., Inc.* v. *Johnston*, 160 Conn. App. 226, 236–37, 124 A.3d 952 (2015). "We review a trial court's decision to deny a litigant's motion for reargument and reconsideration for an abuse of discretion. . . . [A]s with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . . In addition, where a motion is addressed to the discretion of the court, the burden of proving an abuse of that discretion rests with the appellant." (Citations omitted; internal quotation marks omitted.) Id., 236.

The plaintiff has not met that burden. Although it alleges that the court failed to address its claim of statutory aggrievement, the court in its memorandum of decision relied on Connecticut Supreme Court precedent indicating that, to satisfy the first prong of the associational standing test, a plaintiff must demonstrate how it was harmed in a unique fashion by the challenged conduct and must allege a colorable claim of direct injury. See *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, supra, 218 Conn. 348. Equally significant, the court's analysis in this case comports with the standing precepts that our Supreme Court has adhered to in resolving associational standing claims. We, therefore, conclude that the court did not abuse its discretion in denying the plaintiff's motion for reargument and reconsideration.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For purposes of clarity, we refer to Johnson and Pullman individually by name and collectively as the defendants.

[2] A copy of the contract was appended to the plaintiff's complaint and designated as exhibit A.

[3] On March 1, 2018, Johnson filed a "motion to join in and adopt" the motion to dismiss that Pullman had filed two days earlier. The court granted that request.

[4] After commencing this appeal, the plaintiff filed a motion for review of the trial court's denial of its motion for articulation. This court granted review, but denied the relief requested.

[5] In its principal appellate brief, the plaintiff curiously invokes the plain

error doctrine as the "appropriate standard of review" for its claims regarding standing. In so doing, it misconstrues the nature of that doctrine. As our Supreme Court has explained, plain error is a rule of reversibility, not reviewability. See *State* v. *Jamison*, 320 Conn. 589, 595–97, 134 A.3d 560 (2016). It is a bypass doctrine that permits review of an otherwise unpreserved claim. *State* v. *Leach*, 165 Conn. App. 28, 35, 138 A.3d 445, cert. denied, 323 Conn. 948, 169 A.3d 792 (2016); see also Practice Book § 60-5 (codifying plain error doctrine and providing that appellate courts "may in the interests of justice notice plain error *not brought to the attention of the trial court*" (emphasis added)); *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009) (explaining that plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, *although unpreserved*, are of such monumental proportion that they threaten to erode our system of justice" (emphasis added)).

In the present case, the defendants raised the issue of the plaintiff's standing in moving to dismiss this action. The plaintiff responded to that claim by filing an opposition to the defendants' motion to dismiss that was accompanied by both a memorandum of law and an affidavit in support thereof. In addition, the plaintiff filed a timely motion for reargument and reconsideration after the court rendered a judgment of dismissal, in which it further memorialized its claims regarding the standing issue. Accordingly, this is not a case that involves an unpreserved claim of error. Resort to the plain error doctrine, therefore, is unnecessary. See, e.g., *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 578 n.2, 211 A.3d 72 ("the claim at issue . . . was preserved at trial and, thus, is not a claim that falls within the ambit of the plain error doctrine"), cert. denied, 333 Conn. 902, 215 A.3d 160 (2019); *State* v. *Welch*, 25 Conn. App. 270, 274, 594 A.2d 28 (1991) ("[i]t is not necessary for us to embark into . . . plain error analysis because the issue was properly preserved for appeal"), rev'd in part on other grounds, 224 Conn. 1, 615 A.2d 505 (1992). Moreover, given that standing implicates the court's subject matter jurisdiction, and thus may be raised at any time; see *Equity One*, *Inc.* v. *Shivers*, 310 Conn. 119, 126, 74 A.3d 1225 (2013); the issue of preservation is largely an academic one.

[6] A copy of the plaintiff's bylaws was appended to Stevenson's affidavit.

[7] On appeal, the defendants claim that "the trial court was without jurisdiction to consider" Stevenson's affidavit. They are mistaken. It is well established that a motion to dismiss "admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 614, 109 A.3d 903 (2015). As our Supreme Court has explained, when the existing record includes supporting affidavits containing undisputed facts, "the court may look to their content for determination of the jurisdictional issue . . . ." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 516, 923 A.2d 638 (2007); see also *Financial Consulting*, *LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 227, 105 A.3d 210 (2014) (expressly considering affidavit filed in opposition to motion to dismiss to resolve question of standing); *Knipple* v. *Viking Communications*, *Ltd.*, 236 Conn. 602, 608, 674 A.2d 426 (1996) (noting that Supreme Court "has previously considered the undisputed factual allegations in the complaint as well as the undisputed factual allegations in the various affidavits when adjudicating the motion [to dismiss] where no evidentiary hearing has been held").

[8] General Statutes § 12-155 provides in relevant part: "(a) If any person fails to pay any tax, or fails to pay any water or sanitation charges within thirty days after the due date, the collector or the collector's duly appointed agent shall make personal demand of such person therefor or leave written demand at such person's usual place of abode or deposit in some post office a written demand for such tax or such water or sanitation charges, postage prepaid, addressed to such person at such person's last-known place of residence unless, after making reasonable efforts, the assessor is unable to identify the owner or persons responsible. . . .

"(b) After demand has been made in the manner provided in subsection (a) of this section, the collector for the municipality, alone or jointly with the collector of any other municipality owed taxes by such person, may (1) levy for any unpaid tax or any unpaid water or sanitation charges on any goods and chattels of such person and post and sell such goods and chattels in the manner provided in case of executions, or (2) enforce by levy and sale any lien or warrant upon real estate for any unpaid tax or levy upon and sell such interest of such person in any real estate as exists at the date of the levy for such tax. . . ."

General Statutes § 12-157 provides in relevant part: "(a) When a collector levies one or more tax warrants on real estate, he or she shall prepare notices thereof, containing the name of the taxpayer, a legal description of the real property or citation to an instrument in the land records, an assessor's map or another publicly available document identifying the real property's boundaries, the street address, if such real property has one, the amount of the tax or taxes due, including any interest and charges attributable to the property as of the last day of the month immediately preceding the notice, a statement that additional taxes, interest, fees and other charges authorized by law accruing after the last day of the month immediately preceding the notice are owed in addition to the amount indicated as due and owing in the notice, and the date, time and place of sale. The collector shall post one notice on a bulletin board in or near the collector's office in the town where such real estate is situated, if any, or at some other exterior place near the office of the town clerk, which is nearest thereto; one shall be filed in the town clerk's office of such town and such town clerk shall record and index the same as a part of the land records of such town, which recording shall serve as constructive notice equivalent to a lis pendens for all purposes, and one shall be sent by certified mail, return receipt requested, to the taxpayer and each mortgage, lienholder and other encumbrancer of record whose interest is choate and will be affected by the sale. Such posting, filing and mailing shall be done not more than twelve and not less than nine weeks before the time of sale and shall constitute a legal levy of such warrant or warrants upon the real estate referred to in the notice. Such collector shall also publish a similar notice for three weeks, at least once each week, in a newspaper published in such town, or in a newspaper published in the state having a general circulation in such town. The first notice shall be published beginning not more than twelve and not less than nine weeks before the time of sale and the last shall be published not more than four weeks nor less than two weeks before such sale. He shall also send by certified mail, return receipt requested, to the delinquent taxpayer and to each mortgagee, lienholder and other encumbrancer of record whose interest in such property is choate and will be affected by such sale, a similar notice which shall not be required to list information pertaining to properties in which the person to whom the notice is directed has no interest. The notice shall be sent at least twice, the first not more than eight nor less than five weeks before such sale and the last not more than four weeks nor less than two weeks before such sale. The notice shall be addressed to his or her place of residence, if known to the collector, or to his or her estate or the fiduciary thereof if the collector knows him or her to be deceased, or to the address, or the agent of such person, to which such person has requested that tax bills be sent. If there is no address of such person, or if no such agent is given in the records of such town, the notice shall be sent to the place where such person regularly conducts business or other address as the collector believes will give notice of the levy and sale. If a person is a corporation, limited partnership or other legal entity, the notice may be sent to any person upon whom process may be served to initiate a civil action against such corporation, limited partnership or entity or to any other address that the collector believes will give notice of the levy and sale. If no place of residence or business is known and cannot be determined by the tax collector for any owner, taxpayer, mortgagee, lienholder or other encumbrancer whose interest in the property is choate and will be affected by the sale, in lieu of notice by certified mail as provided in this subsection, the notice, together with the list of mortgagees, lienholders, and other encumbrancers of record whose interests in the property are choate and will be affected by such sale, shall be published in a newspaper published in this state, having a general circulation in the town in which such property is located at least twice, the first not more than eight weeks nor less than five weeks before such sale and the last not more than four weeks nor less than two weeks before such sale. . . .

"(d) The collector shall post, at the time and place of the sale, a written notice stating the amount of all taxes, interest, fees and other charges authorized by law with respect to each property to be sold. The tax collector may publish or announce any rules for the orderly conduct of the auction and the making of payment by successful bidders which are not inconsistent with the requirements of law. The tax collector or the municipality may retain the services of auctioneers, clerks and other persons to assist the tax collector in the conduct of the sale and the cost of such persons paid for their services shall be added to the taxes due from the delinquent taxpayer. If more than one property is sold, the tax collector shall apportion

all shared costs equally among all the properties. . . ."

[9] In count two, the plaintiff alleges in relevant part that "[t]he plain and unambiguous text of [§] 12-155 does not provide any authority for [Johnson] to deputize or empower any party other than [Johnson] herself to levy or enforce by sale of real property any delinquent tax balance due and owing to the [municipality]." In count three, the plaintiff alleges in relevant part that "[t]he explicit and unambiguous text of [§] 12-157 does not provide any authority for [Johnson] to deputize or empower any party other than [Johnson] herself to collect any delinquent tax balance due to the [municipality] . . . ."

[10] General Statutes § 12-135 (a) provides in relevant part: "Any collector of taxes, and any state marshal or constable authorized by such collector, shall, during their respective terms of office, have authority to collect any taxes and any water or sanitation charges due the municipality served by such collector for which a proper warrant and a proper alias tax warrant, in the case of the deputized officer, have been issued. Such alias tax warrant may be executed by any officer above named in any part of the state, and the collector in person may demand and collect taxes or water or sanitation charges in any part of the state on a proper warrant. Any such state marshal or constable so authorized who executes such an alias tax warrant outside of such state marshal's or constable's precinct shall be entitled to collect from the person owing the tax or the water or sanitation charges the fees allowed by law . . . ."

General Statutes § 12-162 (a) provides: "Any collector of taxes, in the execution of tax warrants, shall have the same authority as state marshals have in executing the duties of their office, and any constable or other officer authorized to serve any civil process may serve a warrant for the collection of any tax assessed or any water or sanitation charges imposed, and the officer shall have the same authority as the collector concerning taxes or water or sanitation charges committed to such officer for collection." Section 12-162 (b) (1) then sets forth suggested language to be used when an alias tax warrant is issued. The language begins by stating: "To a state marshal . . . or any constable of the Town of . . . ." General Statutes § 12-162 (b) (1).

[11] Under established Connecticut law, "[s]tanding requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins.*, *Inc.*, 294 Conn. 206, 214, 982 A.2d 1053 (2009). At that same time, it is equally well established that a hypothetical injury does not suffice. See, e.g., *Liberty Mutual Ins. Co.* v. *Lone Star Industries*, *Inc.*, 290 Conn. 767, 814, 967 A.2d 1 (2009) ("we must be satisfied that the case before the court does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire" (internal quotation marks omitted)); *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 465, 673 A.2d 484 (1996) (for association to have standing, it must allege invasion of legally protected interest that is concrete and particularized and actual or imminent rather than conjectural or hypothetical).

The plaintiff relies on *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 6 A.3d 726 (2010), claiming that "[n]o party alleged an injury was present" in that case. The plain language of that decision reveals otherwise. The plaintiff in *Bysiewicz* was a declared candidate for the Office of Attorney General who sought a declaratory ruling on the qualifications for that office pursuant to General Statutes § 3-124. *Bysiewicz* v. *DiNardo*, supra, 752–54. In addressing the question of the plaintiff's standing, our Supreme Court first noted the familiar maxim that "a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]." (Internal quotation marks omitted.) Id., 758. The court then concluded that the plaintiff had met her burden in establishing that she was likely to suffer an injury as a result of the application of § 3-124, stating: "In light of the potential injury to the plaintiff's interests if her claims are not adjudicated until after the election, as well as the potential injury to the public's interest in avoiding voter confusion and disruptions in the election process, including the possibility of a vacancy in the [O]ffice of [A]ttorney [G]eneral, we conclude that the action was ripe when it was brought even though the plaintiff had not yet been nominated or elected to the [O]ffice of [A]ttorney [G]eneral." Id., 760–61. The court thus held that the plaintiff possessed standing to pursue that declaratory action. Id., 761.

[12] General Statutes § 52-29 provides: "(a) The Superior Court in any action or proceeding may declare rights and other legal relations on request for

such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment.

"(b) The judges of the Superior Court may make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section."

[13] Practice Book § 17-55 provides: "A declaratory judgment action may be maintained if all of the following conditions have been met:

"(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations;

"(2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and

"(3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure."

[14] The defendants expressly rely on that authority in their appellate brief. More importantly, the trial court relied on *Connecticut Business & Industry Assn., Inc.*, in its memorandum of decision dismissing the plaintiff's action for lack of standing.

[15] Our conclusion is buttressed by the fact that "the rules of practice may not expand or contract the court's subject matter jurisdiction . . . ." *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 287, 914 A.2d 996 (2007); see also General Statutes § 51-14 (a) ("The judges of the Supreme Court, the judges of the Appellate Court, and the judges of the Superior Court shall adopt and promulgate and may from time to time modify or repeal rules and forms regulating pleading, practice and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits. . . . *Such rules shall not abridge, enlarge or modify . . . the jurisdiction of any of the courts. . . .*" (emphasis added)); *State* v. *McGee*, 175 Conn. App. 566, 582–83, 168 A.3d 495 ("[i]t is axiomatic in Connecticut jurisprudence that [rules of practice] do not ordinarily define subject matter jurisdiction" (internal quotation marks omitted)), cert. denied, 327 Conn. 970, 173 A.3d 953 (2017). In light of the foregoing, our Supreme Court has observed that it is "questionable that the judges may, pursuant to their rule-making authority under subsection (b) of § 52-29, limit [or enlarge] the subject matter jurisdiction created by subsection (a) of § 52-29." *Batte-Holmgren* v. *Commissioner of Public Health*, supra, 286; cf. *River Bend Associates, Inc.* v. *Water Pollution Control Authority*, 262 Conn. 84, 104, 809 A.2d 492 (2002) (emphasizing that provisions of our rules of practice cannot confer subject matter jurisdiction on the court and agreeing with defendant that Practice Book § 17-55 (3) is "a rule that merely establishes a test to determine the availability of declaratory relief"); *Wilson* v. *Kelley*, supra, 224 Conn. 116 (expressly declining to hold "that the declaratory judgment statute and rules created substantive rights that did not otherwise exist").

[16] In their appellate brief, the defendants strongly dispute that conclusion, stating that it "flies in the face of numerous Connecticut statutes contemplating that a municipality can choose to hire counsel and other agents to assist in the collection of municipal taxes, and the related statutory authority permitting a town to charge those collection fees against delinquent taxpayers." The defendants direct our attention to General Statutes §§ 7-148 (c) (2) (B), 12-140, 12-141, 12-144b, 12-157 (d), 12-161a, 12-163a, 12-166 and 12-167a to substantiate that contention.

It is axiomatic that, in resolving the issue of a party's standing to maintain a cause of action, we do not consider the merits of that action. See, e.g., *Mendillo* v. *Tinley, Renehan & Dost, LLP*, supra, 329 Conn. 525 ("[i]n deciding whether the plaintiff's complaint presents a justiciable claim, we make no determination regarding its merits" (internal quotation marks omitted)); *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 581, 833 A.2d 908 (2003) (in determining question of standing, court does not consider merits of claim); *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 492, 400 A.2d 726 (1978) ("[w]hen standing is put in issue, the question is . . . not whether . . . on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded"). We therefore express no opinion on the merits of the substantive allegations raised by the parties.

[17] In its reply brief, the plaintiff states that this appeal "boils down to a simple question—if not the plaintiff then who or what entity would ever have standing to challenge [Johnson's] actions?" We can think of at least two persons that would possess such standing: (1) any delinquent taxpayer who was the subject of collection efforts by Pullman on Johnson's behalf; and (2) any marshal who had a warrant recalled by Johnson on an account that was referred to Pullman, in accordance with the terms of the contract.